CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ASEEM PADUKONE (CABN 298812)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6401
FAX: (415) 436-7234
Aseem.padukone@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SIXTO CHRISTOPHER PORRAS,<br><br>Defendant. | NO. 25-CR-00166 TLT<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

As an associate banker at a major financial institution, Sixto Christopher Porras was entrusted by both his employer and customers to handle sensitive personal information. Porras breached that trust. And he did so not once, but twice. He fraudulently used information obtained through his employment at a bank to steal hundreds of thousands of dollars from customer accounts. Though he has now accepted responsibility for his conduct, he only did so after being confronted by a bank investigator.

Prison time is necessary to achieve the purposes of sentencing under 18 U.S.C. § 3553(a), given the seriousness of Porras's conduct, that it happened more than once, and Porras's perplexing explanation regarding the portion of the money that he has not yet returned. That said, the government has accounted for the mitigation factors outlined in the United States Probation Presentence Report ("PSR") and is accordingly recommending a significant downward variance of effectively 50 percent. The government recommends a sentence of 12 months and one day imprisonment, restitution of no less than $100,000[1], a $200 special assessment, and three years of supervised release.[2] The government further requests that the Court grant its forfeiture motion filed at Dkt. 29.

## I. Background

### A. The Scheme

Bank-1 hired Mr. Porras to work at its branch in Modesto, California as an Associate Banker on October 26, 2021. *See* PSR at ¶ 6. Mr. Porras transferred to work at a Bank-1 San Francisco branch on November 27, 2022. *See id*. Less than a year after he transferred to that branch, Mr. Porras used confidential personal information that he was not entitled to use to steal large sums of money from two customers.

On August 2, 2023, Victim-1 visited the Bank-1 branch at which Mr. Porras worked as an Associate Banker in San Francisco. *See id*. Victim-1 sought Mr. Porras's assistance to conduct a wire transfer. *See id*. Victim-1 verbally provided Mr. Porras with their PIN number to effectuate the

[1] The PSR states that restitution should be directed to Victim-1 in an amount to determined. However, Victim-1 has been reimbursed by Bank-1, so Bank-1 has assumed the remaining loss from Mr. Porras's theft. Accordingly, the restitution order should direct Mr. Porras to make his restitution payment to Bank-1.

[2] The government does not seek the imposition of a fine due to Probation's determination that he is unable to pay, in part so that he can prioritize paying the restitution he owes.

transaction. *Id*. Victim-1 inadvertently left behind their debit card at the branch and could not find it when they returned to look for it. *See id*.

The reason they could not find it is because Mr. Porras had taken it. The next day, August 3, 2023, Mr. Porras used Victim-1's debit card to check the balance of Victim-1's account at a Bank-1 ATM in San Francisco, as depicted in security camera footage from near the ATM. *See id*. at ¶ 7. A day later, Mr. Porras was again captured on security camera footage, this time in the lobby of his own branch at Bank-1 using Victim-1's debit card and PIN number. *See id*.

Mr. Porras then engaged in a sustained pattern of skimming money from Victim-1's account over the span of a week. Between August 7, 2023 and August 15, 2023, Mr. Porras executed eleven transactions of $5,000 or $10,000 each, for a total amount of $100,000. *See id*. at ¶ 8. He did so from his teller window, either when there were no customers present, or under the guise of assisting other customers. *See id*. He even used his authority as a bank teller to override a restriction that stopped Victim-1's debit card from working to continue making withdrawals. *See id*.

Mr. Porras's theft did not end with Victim-1. In September 2023, Victim-2 visited the Bank-1 branch where Mr. Porras worked because their card had been declined due to a fraudulent charge. *See id*. at ¶ 9. Mr. Porras was supposed to help Victim-2 replace their card. *See id*. Instead, he reissued the replacement debit card to be mailed to his own home address in San Francisco. *See id*. Mr. Porras also had memorized Victim-2's PIN number after he observed Victim-2 using their card while he was helping them. *See id*. He again engaged in a pattern of withdrawals from the victim's account, this time executing 34 withdrawals in the amount of $10,000 each, between September 8 and September 26, 2023. *See id*. at ¶ 10. He stole a total of $340,000 from Victim-2's account, again from the teller window while either assisting a customer or in some instances when no customers were present. *See id*.

**B. Unraveling of the Scheme**

A Bank-1 internal investigator quickly discovered Mr. Porras's fraud involving Victim-2 in late September 2023. *See id*. at ¶ 11. The investigator confronted Mr. Porras in a Zoom interview, during which Mr. Porras was initially only partially forthcoming. *See id*. He admitted to his conduct with respect to Victim-2 and explained how he had done it, but he also claimed that his embezzlement of

Victim-2's money was the only time he had done so. *See id*. This was not true. While Mr. Porras went to retrieve the $340,000 he had stolen from Victim-2's accounts from his home, the investigator discovered Mr. Porras's embezzlement of $100,000 from Victim-1, which Mr. Porras had not disclosed to her.

Mr. Porras finally admitted to victimizing Victim-1 only after the investigator confronted him. *See id*. However, he claimed that he could not find the money in the location he had stored it. *See id*. Mr. Porras claimed that he stored the money under his bed, and he suspected that the woman who came to clean his house took the money, since it was no longer there. *See id*. at ¶ 12.

### C. Procedural History

On June 17, 2025, a federal grand jury returned a two-count indictment charging Mr. Porras with violating 18 U.S.C. § 656 - Embezzlement of Bank Funds (Count One); and 18 U.S.C. § 1029(a)(5) - Access Device Fraud (Count Two). *See id*. at ¶ 1. Mr. Porras was arraigned on June 30, 2025 and ordered released on bond. *See id*. at ¶ 2. Mr. Porras entered guilty pleas for both counts on February 13, 2026. *See id*. at ¶ 3; Dkt. 27 (Plea Agreement). The Court set sentencing for June 26, 2026.

## II. Guidelines Calculation

The government agrees with Probation that both counts group together. *See id*. at ¶ 17. The base offense level is 7 under USSG §2B1.1(a)(1). *See id*. at ¶ 19. Since Mr. Porras stole $440,000, he receives a 12 point upward adjustment. *See id*. at ¶ 20; USSG §2B1.1(b)(1)(G). With acceptance of responsibility, Porras's final offense level sits at 16. *See id*. at ¶¶ 26-28. The government agrees with Probation that Porras's criminal history category is I[3], resulting in a guidelines range is 21 to 27 months. *See* PSR at ¶ 31-33; 66.

## III. The government's proposed term of imprisonment is sufficient but not greater than necessary to achieve the goals of sentencing under Section 3553(a).

To address the nature of Mr. Porras's offenses and deter future conduct (both by Mr. Porras and others similarly situated, particularly bank employees or those with access to sensitive financial information), the government urges the Court to impose a sentence of 12 months and one day. This

---

[3] However, he is not a zero-point offender because he has one criminal history point for a 2016 DUI offense.

recommended sentence is effectively a generous 50 percent variance (factoring in good time credit) from the low-end of the guidelines range of 21 months. This recommended sentence balances the seriousness of Mr. Porras's conduct with the mitigating factors discussed in the PSR. Anything less would risk trivializing the severity of Mr. Porras's offense.

**A. Nature & Circumstances of the Offense**

Mr. Porras's offenses are factually simple: he abused his role as a bank employee by stealing $440,000 from two customers over the span of two months. Several factors weigh in favor of the government's recommended custodial sentence.

First, Mr. Porras held a position that entrusted him with handling sensitive client information. He brazenly breached that trust. That betrayal should be taken into account by the Court when determining Mr. Porras's sentence. *See United States v. Bragg*, 582 F.3d 965, 969 (9th Cir. 2009) (recognizing that a fraud accomplished by breaching trust is a factor increasing the seriousness of the crime). Though the "Abuse of Trust" enhancement does not apply, [4] his occupation and job responsibilities remain highly relevant to the Court's evaluation of the Section 3553(a) factors. The two victimized customers both relied upon Mr. Porras to assist them with their financial transactions. Victim-1 provided Mr. Porras with their PIN number. *See* PSR at ¶ 6. Mr. Porras then took advantage of Victim-1 forgetting their debit card at the bank and used that card and PIN number to steal money from her account. *See id*.

Victim-2, already the potential victim of an unrelated fraud, sought Mr. Porras's assistance to obtain a replacement card. *See id*. at ¶ 9. Instead of reissuing the card to Victim-2, he sent it to his own home address and used the card to execute 34 withdrawals for a total of $340,000, thereby subjecting victimizing Victim-2 again. *See id*. at ¶ 10. In addition to the direct harm done to these victims, these actions erode customers' faith in our entire financial system. Individuals should not have to go to a bank worrying about whether those employed to help them will betray that trust. Mr. Porras's actions undermine that inherent trust necessary for our country's financial system to function properly.

[4] Mr. Porras's conduct does not qualify for this enhancement under U.S.S.G. § 3B1.3, since his role did not grant him "substantial discretionary judgment that is ordinarily given considerable deference." *See* U.S.S.G. § 3B1.3, Application Note 1. The Application Note explicitly states that the two-level enhancement does not apply "in the case of . . . theft by an ordinary bank teller." *Id*.

Second, that this happened twice and over a span of two months elevates the seriousness of the offense. Had this occurred on just one occasion, the offense would still be serious but perhaps explained by a momentary lapse in judgment. Mr. Porras's conduct here, however, was not a one-off affair. He stole from Victim-1 on or about August 7, 2023. And he did so again, and again, and again – eleven times over the span of eight days. Nor did he stop with just one victim. He similarly stole money from Victim-2 and did so a remarkable 34 times over the span of three weeks in September 2023.

Third, the conduct only stopped after a Bank-1 investigator confronted Mr. Porras in September 2023. He did not stop his criminal conduct on his own accord. Had the investigator not confronted him, there is no telling how much longer the scheme would have continued or how many more customers Mr. Porras would have victimized.

Finally, while Mr. Porras deserves credit for accepting early responsibility in the case, he did not initially admit to stealing from Victim-1 when questioned by the bank investigator. Rather, he insisted that his theft from Victim-2 was the only time he had done so, even though that was not true. More concerning, Mr. Porras finally admitted to the theft after being confronted, but offered a dubious explanation for why he could not find the $100,000 he stole from Victim-2. Mr. Porras speculated that the woman who cleans his house might have taken the money from under his bed, since it was no longer there. It is unclear why this person did not also steal the other $340,000, or why Mr. Porras stored those stolen funds in a different location. And it is curious that the $100,000 that is missing is the same $100,000 theft he neglected to initially tell the investigator about.

The circumstances of Mr. Porras's offenses heavily weigh in favor of a significant custodial sentence.

**B. History and Characteristics of the Defendant**

Though Mr. Porras has a prior criminal conviction for driving under the influence, this is his first conviction involving fraudulent conduct like what he has admitted to in this case. The government has taken this factor into consideration in recommending its significant downward variance. Mr. Porras also appears to have a loving and supportive family, which may reduce the likelihood of recidivism. *See* PSR at ¶ 42.

Yet that family history cuts both ways. Mr. Porras committed his instant offenses despite already having this strong support system in place. Nor did he have the disadvantaged background and upbringing that many defendants who appear before this Court have that often justify a downward variance. *See* PSR at ¶¶ 38-42. That Mr. Porras committed these crimes despite having this background raises concerns about whether he would do so again. While it does not justify withholding a variance from Mr. Porras altogether, it is part of the reason why the government strongly recommends a prison sentence of 12 months and one day.

**C. Avoiding Unwarranted Sentencing Disparities With Similarly Situated Defendants**

As noted in the PSR, both the median and average term of imprisonment for defendants with Mr. Porras's offense level and criminal history category was 14 months. This data is blind to aggravating and mitigating factors in any case, such as the fact that Porras stole while in his role as a banker, that he did so multiple times, and victimized multiple people. Nonetheless, the government's recommendation is still two months lower than both the average and median sentences for a similar offense level. A significantly lower sentence than what the government is recommending would not be in line with the sentences that similarly situated defendants have received.

**D. Need for Deterrence**

The Ninth Circuit has recognized that "[f]raud crimes . . . are calculated, and, as a result, are particularly amenable to general deterrence." *United States v. Thompson*, 130 F.4th 1158, 1167 (9th Cir. 2025) (citing *United States v. Edwards*, 595 F.3d 1004, 1016 (9th Cir. 2010)). Such is the case here. As discussed above, Mr. Porras's crimes were not the result of one momentary lapse in judgment. The fraud schemes were calculated and were executed over the span of two months. A stiff penalty in this case is therefore necessary to deter individuals in positions of trust from repeating Mr. Porras's calculated criminal conduct.

A period of incarceration is also needed for the purposes of specific deterrence. Though Mr. Porras is currently unemployed, he will eventually have to work again. Even if not at a bank, it is likely that any future employment will place him in situations where he can defraud others – whether it is as a cashier who can steal credit and debit card information from customers, a salesperson who can make

false representations to customers, or as an employee falsifying expenses for reimbursement. The potential to commit fraud is everywhere. If Mr. Porras does not receive the custodial sentence recommended by the government, it will send a message to Mr. Porras and other prospective defendants that white collar crimes – even those that includes hundreds of thousands of dollars, a breach of trust, and repeated criminal conduct – will be met with a mere slap on the wrist. Such a message will only embolden Mr. Porras and others who may contemplate committing a similar type of an offense.

**IV. Conclusion**

Mr. Porras betrayed the trust of his employer and multiple customers by seeking to enrich himself by almost half a million dollars at their expense. And he may have continued to do so if not for the bank investigator who discovered his scheme shortly after Mr. Porras victimized his second client. He must now face the consequences. Considering all the 3553(a) sentencing factors, the government respectfully recommends a sentence of 12 months' and one day imprisonment, a three-year term of supervised release, a $100,000 restitution order, and a $100 special assessment. The government also requests that the Court grant its forfeiture motion.

CRAIG H. MISSAKIAN
United States Attorney

Dated: June 18, 2026

*Aseem Padukone*
ASEEM PADUKONE
Assistant United States Attorney